**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **Melissa A. Wilson,** | **Case No. 1:25cv-00030-PAB** |
| **Plaintiff,** | |
| -vs- | |
| | **JUDGE PAMELA A. BARKER** |
| **Sheriff J. Steven Sheldon, et al.,** | |
| **Defendants.** | **MEMORANDUM OPINION & ORDER** |

Currently pending before the Court is Defendants' Motion for Summary Judgment (the "Motion"). (Doc. No. 14.)  On February 2, 2026, Plaintiff filed her Opposition, to which Defendants replied on February 13, 2026.  (Doc. Nos. 17, 18.)  For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part. Defendants are granted summary judgment on Plaintiff's claims for age discrimination, hostile work environment, constructive discharge, ADA discrimination, and FMLA discrimination.  Pursuant to 28 U.S.C. § 1367(c), the Court declines to address Plaintiff's state law claims for unlawful aiding and abetting wrongful termination, retaliation under O.R.C. § 4112.02, and tortious interference with business expectancy. The remainder of the case is REMANDED to the Court of Common Pleas of Richland County, Ohio, from which it was removed.

## I.      Factual Background

Plaintiff was an employee of the Richland County Sheriff's Office and was employed as a records clerk.  (Doc. No. 9, ¶ 2; Doc. No. 11, ¶ 2.)  Plaintiff was born in 1969 and is over the age of forty.  (Doc. No. 9, ¶ 5; Doc. No. 11, ¶ 5.)  Plaintiff commenced her position as a records clerk in August 2013 and worked in that capacity until July 12, 2023.  (Doc. No. 9, ¶ 10–11; Doc. No. 11, ¶

10–11.)  Prior to starting as a records clerk, Plaintiff worked as corrections officer in the Richland County Jail.  (Doc. No. 9, ¶ 12; Doc. No. 11, ¶ 12.)

Defendant J. Steven Sheldon ("Sheriff Sheldon") is the current Sheriff of Richland County, Ohio and is responsible for making employment decisions within the Richland County Sheriff's Office, including those pertaining to all aspects of the department's personnel.  (Doc. No. 9, ¶ 7; Doc. No. 11, ¶ 7.)  At all times relevant to this case, Defendant James Sweat, Jr. ("Captain Sweat") was a Captain within the Richland County Sheriff's Office.  (Doc. No. 9, ¶ 8; Doc. No. 11, ¶ 8.)  At all times relevant to this case, Defendant Joseph Masi ("Major Masi") was a Major within the Richland County Sheriff's Office.  (Doc. No. 9, ¶ 9; Doc. No. 11, ¶ 9.)

**A.  Despite Defendants' willingness to train Plaintiff, Plaintiff struggles with a new electronic records program**

In late 2022, the records department begin using a new computer program called "MATRIX," which was more complicated and advanced than the prior system. (Wilson Dep. 11:1–6; Doc. No. 9, ¶ 18; Doc. No. 11, ¶ 18.)  MATRIX is used to send criminal cases to the prosecutor's office.  (Sweat Dep. 103:1–4.)  Plaintiff, unfortunately, had "difficulty picking up the new system."  (Wilson Dep. 11:7–9; Sweat Dep. 104:14–20.)  Based on this, Defendants offered Plaintiff additional training.  For example, Captain Sweat testified that:

> We sat down with her. We had multiple meetings with she and I and Lisa. She and I and the training sergeant, we asked her for her input into what we needed to do to help her, what she felt her areas were that needed to be, you know, addressed the most with the program. We gave her an opportunity to continue to utilize the system and ask questions and make notes and bring back to us, you know, what she needed in addition to what we were providing.

(Sweat Dep. 104:21–105:11; *id.* at 116:5–6 ("We gave her extra remedial training. She continued to have training on the Matrix").)  And despite being offered additional training by Captain Sweat and

2

Lisa Finely (Plaintiff's supervisor), Plaintiff chose to not to undergo additional training.  (Wilson Dep. 12:5–13:8.)

### B.       Plaintiff takes FMLA leave based upon a depression diagnosis

A few months later, in approximately April of 2023, Plaintiff was diagnosed with clinical depression.  (Wilson Dep. 30:6–19.)  As a result, Plaintiff decided to take FMLA leave, which began on May 1, 2023.  (Doc. No. 9, ¶ 45; Doc. No. 11, ¶ 45.)  Plaintiff returned to work on June 16, 2023. (Wilson Dep. 21:21–24.)

Upon her return, on June 21, 2023, Plaintiff received a written reprimand for not providing a return-to-work release as required by one of the department's polices.   (Wilson Dep. 40:5–25; Doc, No. 13-9, PageID #351.)   That policy provides that

> When sick leave usage [which includes FMLA leave] is for the employee, they shall be required to provide documentation that they are cleared to return to full duty by providing a physician's verification statement from a medical facility which employs a physician, nurse practitioner, dentist or optometrist. The employee shall not return to duty until such documentation is provided. Failure to provide proper documentation may result in disciplinary action.

(Doc. No. 14-9, PageID #423.)  Plaintiff did not file a grievance concerning her reprimand.  (Wilson Dep. 6:21–25.)

The issues for Plaintiff did not end there.  In one instance, two of plaintiff's coworkers left her alone in the records departments for two hours contrary to a rule that required two employees to be present in the records department. (Wilson Dep. 17:22–18:10.)  In another instance, Plaintiff heard from another employee, Erica Spicer ("Spicer") that "Captain Sweat said loud enough that everybody could hear that [she] could not do [her] job duties because of mental issues." (*Id.* at 20:20–22, 22:2–9.)

### C.    Plaintiff's strained relationship with her coworkers

Plaintiff's relationship with her coworkers was not perfect.  Plaintiff testified that Captain Sweat "would talk down to" her and he "intimidated [her] whenever [she] would go to him."  (Wilson Dep. 14:23–15:2.)  Captain Sweat testified consistently and acknowledged that, at times, people, including Plaintiff, would cry in front of him.  (Sweat Dep. 81:25–82:18.)  Plaintiff further testified that Finley also talked down to her and treated her worse than her coworkers.  (Wilson Dep. 8:1–10.)

But as many relationships can be, Plaintiff's relationship with her coworkers was nuanced.  For example, Plaintiff testified that "[t]here were times [when] [Capt. Sweat] was friendly to [her]" and that Capt. Sweat did not talk down to her every day.  (*Id.* at 38:9–17.)  And she testified that Capt. Sweat never ignored her and never turned his back on her.  (*Id.* at 46:14–19.)  Plaintiff also testified that when she raised concerns to Capt. Sweat, he would try and address the issue.  (*Id.* at 8:1–10.)  Moreover, Captain Sweat tried to address Plaintiff's concerns with Finely. (Wilson Dep. 8:18–24.)  In addition, Plaintiff testified that Major Masi and Sheriff Sheldon were respectful to her.  (*Id.* at 14:17–18.)

### D.    Plaintiff resigns from her position as a records clerk

Perceiving that she was in a hostile work environment, Plaintiff decided to resign from her job on June 28, 2023. (Doc. No. 9, ¶ 57; Doc. No. 11, ¶ 57.)  Plaintiff's resignation letter reads:

> Please accept this letter as my formal resignation from my position as Records Clerk.  I can no longer work in this hostile work environment, it is causing me to have health issues that is hindering me from doing my job.  My last day of work will be July 12, 2023.

(Doc. No. 13-10, PageID #354.)  Sheriff Sheldon accepted Plaintiff's resignation.  (Sheldon Dep. 55:10–11.)

Upon learning of Plaintiff's resignation, Captain Sweat offered Plaintiff the opportunity to

4

transfer to the jail as a corrections officer.  (Wilson Dep. 42:5–14; Sweat Dep. 119:17–120:22.) Plaintiff did not take up Captain Sweat on the offer.  Then, on July 12, 2023, Plaintiff attempted to rescind her resignation, but that request was declined by Sheriff Sheldon.  (Doc. No. 9, ¶ 58; Doc. No. 11, ¶ 58; Sheldon Dep. 55:10–16.)  That day, Plaintiff attempted to connect with Sheriff Sheldon to discuss the recission, but he did not return two of her phone calls and he "didn't even look at [Plaintiff] or acknowledge [her]."  (Wilson Dep. 27:1–6.)

### E.    Plaintiff files a charge with EEOC

On February 12, 2024, Plaintiff filed an EEOC charge naming the "Richland County Sheriff Office" as the respondent.   (Doc. No. 11-1.)  Therein, Plaintiff alleges, in relevant part, that:

> I began my employment with the above-named Respondent in or around December 1995. My most recent position was Records Clerk. Beginning in or around October 2022, I was subjected to sex-based, age-based, disability-based harassment and retaliation by Supervisors Major Joe Masi, Captain James Sweat and Sheriff Steve Sheldon in the form of hostile work environment, discipline, disparate treatment, reduction in job duties, work being delegated to a younger employee and derogatory comments referencing my disability. I made a formal complaint to HR Director Kelly Christiansen in or around 10/2022 and on multiple occasions to Supervisors and HR throughout 2022 and 2023. The Respondent failed to take immediate and appropriate corrective action. In or around 06/2023, I received disciplinary action for utilizing FMLA as a result of complications related to my disability and not providing RTW documentation. Other similarly situated employees outside of my protected class were not subjected to the same discipline. Subsequently, in or around July 2023, I resigned from my position. I believe I was discriminated against due to my Sex, Female (sic) and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII), due to my Age (40+), in violation of Age Discrimination in Employment Act of 1967, as amended and on the basis of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

(Doc. No. 11-1, PageID #111.)

### F.    Two other former employees pursue discrimination claims against Defendants

Plaintiff is not the only person pursuing discrimination claims against Defendants.  Currently pending before this Court are two other lawsuits filed by Spicer and Megan Collins ("Collins") based

5

on employment discrimination.  *See* Case No. 1:25-cv-25; Case No. 1:25-cv-29.  These lawsuits, like Plaintiff's here, concern alleged employment discrimination against Defendants.  According to Plaintiff, it was Spicer's idea to pursue EEOC claims and a complaint against Defendants.  (Wilson Dep. 69:24–70:3.) [1]

The parties have not filed any materials from Collins' case, except for her EEOC charge.  Therein, Collins alleges, in relevant part, that

> My most recent position was 911 Dispatcher.  Over the course of my employment, I was subjected to race-based harassment by Supervisor Captain James Sweat and co-workers in the form of comments such as "it got on me . . . your hair grease" referenced an incident with training officer in dispatch and false allegations from Supervisor James Sweat referencing me coaching another Black coworker in filing a complaint against training officer Abbey Beaver.  I was also subjected to race and sex-based disparate treatment in the form of being denied training opportunities despite tenure in comparison to other similarly situated individuals outside of my protected class with less tenure and hostile work environment by supervisor Captain James Sweat.  I did not inform HR of the racially motivated harassment due to fear of retaliation.  Respondent failed to take immediate and appropriate corrective action.  Subsequently, on or about October 11, 2023, I resigned from my position.

(Doc. No. 17-6, PageID #583.)  Spicer's EEOC charge is not in the record, but in her deposition, she testified that she believes she was discriminated against based on her gender and age.  (Spicer Dep. 53:10–12.)

## II.    Procedural Background

On December 9, 2024, Plaintiff filed her Complaint against Defendants in the Richland

---

[1] Defendants argue at length that the EEOC charges were designed to affect the Republican primary for the Richland County sheriff.  Defendants appear to imply that Spicer's husband, Donald Zehner, was running against Sheriff Sheldon at the time, and that the EEOC charges were designed to help Mr. Zehner in the election.  The Court has not considered this theory when making its ruling today because it is not relevant to the legal issues discussed below.  While this may be relevant at trial for Plaintiff's remaining state law claims, it is not relevant in the context of this Court evaluating the Motion.

County Court of Common Pleas.  (Doc. No. 1-2.)  Therein, Plaintiff brought claims for (1) age discrimination (Count One); (2) hostile work environment (Count Two); (3) constructive discharge (Count Three); (4) unlawful aiding and abetting wrongful termination (Count Four); (5) retaliation under O.R.C. § 4112.02 (Count Five); (6) discrimination under the ADA (Count Six);  (7) FMLA discrimination (Count Seven); and (8) tortious interference with business expectancy (Count Eight).[2] On January 8, 2025, Defendants removed this case to this Court.  (Doc. No. 1.)

On March 26, 2025, Plaintiff filed her First Amended Complaint, raising the same eight claims that were included in her initial Complaint.  (Doc. No. 9.)  Defendants filed an Answer on April 8, 2025 (Doc. No. 11) and the matter proceeded with discovery.  After the completion of discovery, on December 5, 2025, Defendants filed their Motion.  (Doc. No. 14.)  On February 2, 2026, Plaintiff filed her Opposition, to which Defendants replied on February 13, 2026.  (Doc. Nos. 17, 18.)  Accordingly, Defendants' Motion is ripe for review.

## III.    Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006).  "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"

---

[2] Although Plaintiff does not reference federal law in the Complaint for her hostile work environment and constructive discharge claims, based on the parties' briefing in this case, the Court construes these claims as arising under federal law. For example, Plaintiff relies solely on Sixth Circuit case law in her Opposition with respect to her constructive discharge claim.  And, with respect to her hostile work environment claim, Plaintiff asserts that "[a] hostile work environment claim is analyzed most commonly under Title VII of the Civil Rights Act of 1964 and, if asserted in parallel, Ohio Rev. Code § 4112."  The Court construes this as Plaintiff asserting that her hostile work environment claim is analyzed under both federal and Ohio law.

*Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.  At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018).  In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014).  The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008).  "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems*., 593 F. App'x at 508–09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc*., 101 F.Supp.3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

## IV.     Analysis

Upon review of the briefing, and record in this case, the Court finds that Defendants are entitled to summary judgment on Plaintiff's federal claims.  The Court addresses each claim in turn

below.  And because the Court lacks original jurisdiction over Plaintiff's state law claims and as explained in detail below, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

### A. Defendants are entitled to summary judgment on Plaintiff's constructive discharge claim

In their Motion, Defendants argue that "Plaintiff's objective feelings of her work conditions fail to establish intolerable working conditions, and she cannot show Defendants' intent was to have her resign." (Doc. No. 14, PageID #375.)  According to Defendants, "Plaintiff admits Sheriff Sheldon and Maj. Masi were always respectful and pleasant toward her" and that her "sole issue with them is they should have let her rescind her resignation." (*Id.*)  Defendants assert that "Plaintiff's objective feelings about Capt. Sweat or any other perceived issues at RCSO also fail to establish a constructive discharge claim." (*Id.*) They argue that although Plaintiff "alleges Capt. Sweat would talk down to her" and "that Capt. Sweat made a single remark about her mental health while out on FMLA leave," "courts have rejected constructive discharge claims where the evidence of harassment and disparaging comments were isolated to only a few incidents and by a few individuals and were not pervasive enough to significantly alter Plaintiff's working conditions." (*Id.* (cleaned up).) Defendants further assert that they "were responsive to Plaintiff and wanted to keep her employed" because they "held a labor-management meeting to address any issue," "offered Plaintiff additional training," and "Capt. Sweat made himself available if any employees had issues with the system." (*Id.* at PageID #376.)   Finally, Defendants assert that Plaintiff's alleged "personality conflicts with co-workers do not constitute constructive discharge or show it was Defendants' intent for her to resign." (*Id.*)

Plaintiff counters that there is a genuine issue of material fact concerning whether her

resignation amounted to constructive discharge.  Plaintiff "claims that Defendant Sweat belittled and embarrassed Plaintiff and made statements to staff referring to Plaintiff not being able to do her job because she had mental problems" and she asserts that "Captain Sweat naturally denies making that statement." (Doc. No. 17, PageID #451.)  According to Plaintiff, "[w]hether the statement was made is a question of material fact." (*Id.*)  Plaintiff points to Spicer's complaints against Captain Sweat as "significant" and that Plaintiff's "complaints are largely based on the similar issues with Defendant Sweat," and that "Plaintiff and Megan Collins set forth their similar unlawful treatment in their affidavits in their Charges of Discrimination." (*Id.* at PageID #542.)  Plaintiff claims that "it is evident that, considering three (3) separate lawsuits filed by female employees, and by Sheriff Sheldon acknowledging not hiring female captains or female chief deputies, women within the RCSO serve on a lower level than men." (*Id.*)  Plaintiff next asserts that Sheriff Sheldon "did absolutely nothing" when Plaintiff stated in her resignation letter that she could "no longer work in this hostile work environment." (*Id.* at PageID #453.)  Plaintiff then argues that "[w]hether Defendant Sweat's actions and his degrading and intimidating tone when addressing Plaintiff each time she approached him with a work-related issue, was intentional is a question of material fact." (*Id.*)  Plaintiff concludes that "the record fully supports Plaintiff's claim that Defendant Sweat intentionally humiliated her and, by and through his conduct, intentionally harassed her in effort to cause her to resign." (*Id.* at PageID #454.)

In their Reply, Defendants argue that that while "Plaintiff alleges Capt. Sweat belittled and embarrassed her," she "is unable to identify any examples of such conduct." (Doc. No. 18, PageID #587.)  Defendants assert that "Plaintiff's memorandum in opposition ignores her testimony that when she went to Capt. Sweat with a problem, he would address it" and ignores that Plaintiff testified

10

that "Capt. Sweat was actively searching for another position to which she could move and she declined." (*Id.*)  Defendants also assert that "Plaintiff admits that Sheriff Sheldon and Maj. Masi were always respectful and pleasant toward her and that Capt. Sweat was friendly to Plaintiff and never ignored or turned his back on her." (*Id.* at PageID #587–88.)

"A constructive discharge occurs when 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 814 (6th Cir. 2020) (quoting *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008)).  When evaluating whether a reasonable employee would have felt compelled to resign, the Sixth Circuit evaluates several factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan v. Denny's*, 259 F.3d 558, 569 (6th Cir. 2001). In this case, of the seven *Logan* factors, Plaintiff only points to the sixth factor—"badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation."  Plaintiff does not point to evidence, and the record does not reflect, that she received a demotion, a reduction in salary, a reduction in job responsibility, a reassignment to work under a younger supervisor, or received an offer of early retirement or an offer of less favorable employment terms.  Upon review of the record, even accepting Plaintiff's testimony as true, Plaintiff was not constructively discharged as a matter of law.

Plaintiff testified that she believed there was a hostile work environment because (i) Captain Sweat "would talk down to" her and he "intimidated [her] whenever [she] would go to him," (ii) Finley would also talked down to her, (iii) the day Plaintiff returned from FMLA leave, two of her

coworkers only worked until 2:00 p.m. and did not communicate with her, (iv) her coworkers were "not communicating" by ignoring her and turning their back to her, and (v) "being treated different than the others." (Wilson Dep. 14:23–15:18; 17:22–18:10, 46:5–10.) She also testified that she "was told [by Spicer] that Captain Sweat said loud enough that everybody could hear that [she] could not do [her] job duties because of mental issues." (Wilson Dep. 20:20–22:5.) Plaintiff further testified that Finley also talked down to her and treated her worse than her coworkers. (Wilson Dep. 8:1–10.) The record also shows that employees have cried in front of Captain Sweat. (Sweat Dep. 81:25–82:18.) And Plaintiff asserts that she asked one of her coworkers to get something from the printer "and she turned her back towards [Plaintiff] and would not answer [Plaintiff]." (Wilson Dep. 13:15–21.)

But, as Defendants correctly point out, Plaintiff was unable to point to any specific examples of how people talked down her, and Plaintiff testified that "[t]here were times [when] when [Capt. Sweat] was friendly to [her]" and that Captain Sweat did not talk down to her every day. (*Id.* at 15:19–21; 38:9–17.) And she testified that Captain Sweat never ignored her and never turned his back on her. (*Id.* at 46:14–19.) Plaintiff also testified that when she raised concerns to Captain Sweat, he would try and address the issue. (*Id.* at 8:1–10.) Captain Sweat also offered additional training to Plaintiff, which she chose not to pursue. (*Id.* at 12:5–14.) And Captain Sweat tried to find another position for her as a corrections officer after it came to his attention that Plaintiff planned on resigning. (Wilson Dep. 42:5–14; Sweat Dep. 119:17–120:22.) Moreover, Captain Sweat tried to address Plaintiff's concerns with Finely. (Wilson Dep. 8:18–24.) In addition, Plaintiff testified that Major Masi and Sheriff Sheldon were respectful to her. (*Id.* at 14:17–18.)

Spicer likewise did not provide many examples that would establish an intolerable work

12

environment.  Spicer testified that Captain Sweat was dissatisfied with her based on the way Spicer handled an awards ceremony in 2021.  (Spicer Dep. 35:19–36:17.)  On a separate occasion, Spicer testified that Captain Sweat called her a liar.  (Spicer Dep. 43:4–11.)  Spicer also she believes that Captain Sweat was attempting to solicit other employees to complain about her.  (Spicer Dep. 24:3–7.)  Spicer also testified that on one occasion Captain Sweat was "ranting and raging about [Plaintiff's] mental health and not being able to do her job."  (Spcier Dep. 130:24–131:2.)  And with respect to Sheriff Sheldon, she believes that he treated her inappropriately as a female because "he deemed [her] a liar."  (Spicer Dep. 53:3–12.)

In her Opposition, Plaintiff also points to deposition testimony where Sheriff Sheldon was aware of "11 kinds of complaints given to" him where the "main focus is on Captain Sweat,"[3] and that "over the last several years," Captain Sweat "greatly improved in his interpersonal skills."  (Sheldon Dep. 61:11–62:9; 63:1–13.)  And Plaintiff asserts that, after informing Captain Sweat about the printer issue, Captain Sweat did not talk to Plaintiff's coworkers about the incident. (Sweat Dep. 110:9–111:9.)  The Court is also cognizant that Collins filed an EEOC charge, but her deposition transcript was not filed with the Court, and there are no affidavits telling her story.

On balance, these facts are insufficient to establish constructive discharge as a matter of law. The Sixth Circuit has cautioned that "[c]onstructive discharge is hard to prove."  *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018).  Not only is establishing constructive discharge "a high bar," but the evidence must demonstrate that Plaintiff's conditions were 'hellish, or at least close to it.'"  *Batchelor v. Brilliance Sch.*, No. 1:22-CV-01049-PAB, 2023 U.S. Dist. LEXIS 206031, at *12 (N.D. Ohio Nov. 17, 2023) (Barker, J.) (quoting *Gorbe v. City of Lathrup Vill.*, No. 21-1532,

---

[3] Major Masi was also aware that complaints were made against Captain Sweat. (Masi Dep. 62:19–25.)

13

2022 U.S. App. LEXIS 11685, at *13–14 (6th Cir. Apr. 28, 2022)). Accordingly, "criticism and negative feedback do not suffice, especially when contained to a few isolated incidents." *Tchankpa*, 951 F.3d at 814 (citing *Cleveland v. S. Disposal Waste Connections*, 491 F. App'x 698, 707 (6th Cir. 2012); *Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002)). Likewise, "[h]urt feelings are not enough to create a case of constructive discharge." *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012) (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 479 (6th Cir. 2002)). And criticizing an employee for taking leave under the FMLA is not enough either. *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 631 (6th Cir. 2018) ("And the fact that the board's criticism was directed at Groening's use of FMLA leave does not somehow flip a switch, suddenly making her working conditions intolerable"). At bottom, "intolerability is a demanding standard." *Tchankpa*, 951 F.3d at 814.

The Sixth Circuit's unreported decision in *Brister v. Mich. Bell Tel. Co.*, 705 F. App'x 356 (6th Cir. 2017) is instructive here. There, the plaintiff relied solely on the "badgering, harassment, or humiliation" factor to support her constructive discharge claim. To support his claim, the plaintiff pointed to the following evidence:

> (1) testimony from a fellow manager that he found Jeup crying from Keeling's unfair treatment; (2) testimony from a fellow manager that he observed Keeling harassing and treating Jeup abusively; (3) the fact that within a month of becoming Jeup's supervisor, Keeling began targeting her for humiliation and criticism at meetings; (4) comments from Keeling to Jeup degrading her and calling her stupid during their daily coaching sessions; (5) comments from Keeling to Jeup telling her that everyone in the office hated her and did not want her there; (6) comments from Keeling telling Jeup that she needed to seek psychological help and seek help from the employee assistance program; and (7) comments from Keeling to Jeup, stating "it's them or you" and that she needed to "learn to play the game."

*Id.* at 360. The Sixth Circuit found that "Keeling's treatment of Jeup was shameful and highly inappropriate for a workplace; however, this, by itself, is insufficient to establish a claim of constructive discharge." *Id.* Here, viewing the evidence in the light most favorable to Plaintiff, her

14

coworkers' and supervisors' conduct here may be shameful and inappropriate for the workplace, but it does not even rise to the level of the conduct rejected in *Brister*.

The Court's conclusion is further supported by the Sixth Circuit's decision in *Tchankpa*. There the plaintiff offered evidence of a supervisor "(1) forcing [plaintiff] to lift heavy laptops despite his shoulder injury; (2) denying [plaintiff's] work-from-home request; (3) threatening to fire [plaintiff]; (4) giving other employees preferential treatment; and (5) giving [plaintiff] unwarranted negative feedback." *Tchankpa*, 951 F.3d at 815. The Sixth Circuit found that "[n]one of these are objectively intolerable." *Id.* The Court finds that Defendants' conduct here, is at best, is just as bad as the conduct rejected by the *Tchankpa* court.

For all these reasons, the Court finds that Plaintiff has failed to raise a genuine issue of material fact as to whether her working conditions were objectively intolerable. The Court therefore finds that Defendants are entitled to summary judgment on Plaintiff's constructive discharge claim.

### B.        Plaintiff's discrimination claims fail as a matter of law

To maintain a prima facie claim of ADA discrimination, age discrimination, or FMLA discrimination, the plaintiff must establish she suffered an adverse employment action. *Pemberton v. Bell's Brewery, Inc.*, 150 F.4th 751, 767 (6th Cir. 2025) (ADA discrimination claims); *Blizzard v. Marion Tech. College*, 698 F.3d 275, 284 (6th Cir. 2012) (age discrimination claims); *Marshall v. Rawlings Co. LLC*, 854 F.3d 368, 381 (6th Cir. 2017) (FMLA discrimination claims).[4]   In their Motion, Defendants argue that Plaintiff's discrimination claims fail because she did not suffer an

---

[4] In her Opposition, Plaintiff appears to argue a claim for FMLA interference and for sex discrimination. The Amended Complaint, however, does not include a claim for FMLA interference or a standalone claim for sex discrimination. Thus, the Court will disregard those arguments. *Otis v. Metro. Gov't of Nashiville & Davidson Cty.*, No. 3:15-cv-01512, 2017 U.S. Dist. LEXIS 171698, at *15, n.3 (M.D. Tenn. Oct. 17, 2017) ("Additionally, Metro moves for summary judgment on Otis' ADA and ADEA harassment claims, to the extent she brings them . . . Those claims are not in the Complaint, and therefore Otis did not properly bring either claim").

15

adverse employment action. (Doc. No. 14, PageID #379–381.) In her Opposition, Plaintiff asserts, without citation, that "[a]n adverse employment action is not only termination, but can include various other factors, including for example, being talked down to, being degraded, being refused training, being disciplined, being suspended and ultimately being constructively discharged and having recission of your resignation denied." (Doc. No. 17, PageID #458.) The Court addresses each below.

> **1.      Begin "talked down to" or "degraded" is not an adverse employment action**

Being "talked down to" or "being degraded," is not enough to establish an adverse employment action. An adverse employment action is "a materially adverse change in the terms and conditions of [a plaintiff's] employment." *Spees v. James Marine, Inc*, 617 F.3d 380, 391 (6th Cir. 2010) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc)). Therefore, "[e]mployment actions causing humiliation, hurt feelings, and bruised egos . . . do not rise to the level of an adverse employment action." *Harrison v. P&G Distrib., LLC*, 290 F. Supp. 3d 723, 734 (S.D. Ohio 2017). Therefore, even assuming Plaintiff was "talked down to" or "degraded," that is not enough to maintain a discrimination claim. *Petro-Ryder v. Pittman*, No. 15-2908, 2015 U.S. Dist. LEXIS 166061, at *21 (E.D. Pa. Dec. 11, 2025) ("Petro-Ryder claims Pittman yelled at her and degraded her in front of other officers . . . These comments, no matter how unpleasant, do not constitute an adverse employment action"); *Olds v. Cracker Barrel Old Country Store, Inc.*, No. 1:13-CV-01876-MHS-JCF, 2015 U.S. Dist. LEXIS 196012, at *21 (N.D. Ga. July 31, 2025) ("Defendants argue that Plaintiff's complaints of verbal admonishments and various incidents of being yelled at and degraded fail as adverse employment actions because they are merely mundane, workplace slights . . . The undersigned agrees").

### 2.    Plaintiff was not refused training

The Sixth Circuit has repeatedly found that general "allegations of insufficient training do not rise to the level of an adverse employment action." *Shivers v. Charter Commc'ns, Inc.*, No. 22-3574, 2023 U.S. App. LEXIS 11109, at *15–16 (6th Cir. May 4, 2023); *see also Craggett v. Jefferson County Bd. of Educ.*, 491 F. App'x 561, 577 (6th Cir. 2012) ("mere denial of a supplemental training, even if other employees were allowed to attend the training, is not an adverse employment action"). Nevertheless, Plaintiff admitted in her deposition that she was offered training:

Q:  Were you ever offered additional training?

A:  I was offered, yes.

Q:  Okay.  And did you undergo additional training?

A:  No, I did not.

Q:  Why not?

A:  Because I didn't know the things I needed to be trained on until they came up.

*  *  *

Q:  And I think it is fair to say though that in the training that you underwent the idea was that you would know how to address the issues as they appear?

A:  Yes.  But, like I said, I don't believe I was trained certain things.

Q:  What certain thing were you concerned about your level of training on?

A:  I can't think of any specifics right now.

(Wilson Dep. 12:5–13:8.)  Captain Sweat's testimony is consistent with Plaintiff's testimony:

Q:  Did you ever give her additional training or recommend training for her to not struggle with Matrix?

A:  Yeah.  We offered continuous training for her.

17

Q: How was that offered to her?

A: We sat down with her. We had multiple meetings with she and I and Lisa. She and I and the training sergeant, we asked her for her input into what we needed to do to help her, what she felt her 6 areas were that needed to be, you know, addressed the most with the program. We gave her an opportunity to continue to utilize the system and ask questions and make notes and bring back to us, you know, what she needed in addition to what we were providing.

(Sweat Dep. 104:21–105:11.)

Therefore, the undisputed evidence in this case establishes that Plaintiff was trained and was offered additional training. Accordingly, Plaintiff did not suffer an adverse employment action based upon her claimed "refusal of training."

### 3. Plaintiff cannot base her discrimination claims on a constructive discharge or Defendants' refusal to accept her rescission requests

Having found that Plaintiff was not constructively discharged, Plaintiff cannot base her discrimination claims on her resignation. *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999) ("When an employee voluntarily resigns, he cannot claim that he suffered an adverse employment decision under the ADA or the FMLA"); *see also Gorbe v. City of Lathrup Vill.*, No. 21-1532, 2022 U.S. App. LEXIS 11685, at *13 (6th Cir. Apr. 28, 2022) ("A voluntary resignation is not an adverse employment action unless the plaintiff can prove that he was constructively discharged"); *Winfield v. Gates*, No. 2:09-cv-244, 2010 U.S. Dist. LEXIS 128019, at *23 (S.D. Ohio Dec. 3, 2010) ("Because she therefore cannot establish a constructive discharge and because she voluntarily terminated her own employment through effective resignation, Winfield cannot show that she suffered the requisite adverse employment action").

Defendants' decision to not accept Plaintiff's request to rescind her resignation is also not an adverse employment action. Numerous courts, including the Sixth Circuit in an unreported decision,

18

have concluded that an employer's decision to not permit an employee to rescind a resignation is not an adverse employment action. *Pownall v. City of Perrysburg*, 63 F. App'x 819, 824 (6th Cir. 2003) ("Her subsequent attempts to rescind that resignation were ineffective under Ohio law. Accordingly, she cannot claim that she suffered an adverse employment decision and cannot maintain a claim that the City violated her rights under the FMLA"); *Wilson v. Chipotle Mexican Grill, Inc.*, No. 1:12-cv-87-HJW, 2013 U.S. Dist. LEXIS 161685, at *25–26 (S.D. Ohio Nov. 13, 2013) ("Chipotle[] was under no obligation to reinstate an employee who had voluntarily resigned"); *see also Shaw v. Yale New Haven Hosp.*, No. 3:18-cv-00067 (VLB), 2020 U.S. Dist. LEXIS 69199, at *21 (D. Conn.. Apr. 21, 2020) ("Nor does Defendant's refusal to rescind Plaintiff's voluntary employment resignation constitute an adverse employment action"); *Hammonds v. Hyundai Motor Mfg. Ala., LLC*, No. 2:10-cv-103-TFM[wo], 2011 U.S. Dist. LEXIS 69264, at *15 (M.D. Ala. June 28, 2011) ("The Court joins with other courts which hold that the refusal to allow rescission of a voluntary resignation does not constitute an adverse action"). Therefore, Defendants' decision to not accept Plaintiff's rescission request is not an adverse employment action as a matter of law.

### 4. Plaintiff cannot base her discrimination claims on being disciplined and suspended

Finally, Plaintiff's assertion that "being suspended" could constitute an adverse employment action is meritless because the record does not reflect that Plaintiff was suspended. And although the record reflects Plaintiff received a written reprimand, and that could constitute an adverse employment action, her discrimination claims nonetheless fail.

Absent direct evidence of discrimination, the *McDonnell Douglas* burden-shifting test governs Plaintiff's discrimination claims. *Pemberton*, 150 F.4th at 767; *Blizzard*, 698 F.3d at 283; *Marshall*, 854 F.3d at 379. Under that test:

19

> Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse action. *Cooley*, 25 F.3d at 1329. If the employer meets its burden, the burden shifts back to the plaintiff to establish that the proffered reason was merely pretext for unlawful discrimination. *Ibid.* To establish pretext, a plaintiff may show that the defendant's reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Carter*, 349 F.3d at 274 (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003)).

*Pemberton*, 150 F.4th at 767.

In this case, Defendants argue that "[t]he policy requiring a return-to-work release is a legitimate, nondiscriminatory RCSO policy and Plaintiff admits she failed to comply with it." (Doc. No. 14, PageID #380.) Defendants assert that "[t]he written reprimand is based on that legitimate policy requirement and unrelated to Plaintiff's exercise of FMLA rights or any other protected characteristic or action" and that "[t]he requirement for a return-to-work release is for any employee using sick leave that equals or exceeds 24 consecutive hours." (*Id.*) Defendants conclude that "[s]ince the disciplinary action would have occurred regardless of any FMLA leave use or protected class or activity, and Plaintiff cannot show someone from outside her protected class was treated better, it fails to support her claims." (*Id.*) In Plaintiff's Opposition, she does not dispute that the violation of the RCSO policy is a legitimate, nondiscriminatory reason for her discipline, and does not point to any evidence establishing pretext.[5] (*See generally* Doc. No. 17.) Defendants, in their Reply, point this out: "Plaintiff's discipline for failing to comply with RCSO policy was a legitimate, non-discriminatory business reason that Plaintiff does not even attempt to establish pretext." (Doc.

---

[5] In her statement of facts, Plaintiff does reference that "Marci Kopp, Administrative Officer for RCSO advised Plaintiff by email that she would need to provide a release to return to work form prior to her return to work and that if it is not received her return 'may be delayed' . . . Nowhere in that email did the administrator indicate that if the release was not timely provided it would be a violation of RCSO Sick Leave Policy." (Doc. No. 17, PageID #447.) Plaintiff, however, has not asserted that this is pretext. Even if Plaintiff did, that email is not in the record, and the Court is not convinced that the failure to inform Plaintiff of a work policy would amount to pretext.

No. 18, #593.)

The Court agrees with Defendants that the policy is a legitimate, nondiscriminatory reason for Plaintiff's discipline.  *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) ("Specifically, the district court pointed to Toho's policy, stated in its manual, that termination is an acceptable punishment for a violation of the company's safety rules, of which horseplay is one. This constitutes a sufficient, legitimate reason for the final written warning Chattman was given"); *Walton v. Dana Light Axle Mfg., LLC*, No. 3:23-cv-01315-JGC, 2025 U.S. Dist. LEXIS 81427, at *17 (N.D. Ohio Mar. 31, 2025) (holding defendant produced evidence of a legitimate, nondiscriminatory reason for terminating by pointing to evidence showing that the plaintiff was disciplined "in accordance with its progressive discipline policy"); *Pagan v. Select Speciality Hosp. - Youngstown, Inc.*, No. 4:11CV00355, 2012 U.S. Dist. LEXIS 83796, at *31–32 (N.D. Ohio June 18, 2012) (holding defendant established a legitimate, nondiscriminatory reason because the reason for discharging the plaintiff "was the enforcement of its attendance policy").

But Plaintiff has not produced any evidence that enforcement of the policy was pretext.  "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation."  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400, n.4 (6th Cir. 2009). In other words, "Plaintiff must show that the proffered justification 'is not the real reason' he was disciplined."  *Stickland v. City of Detroit*, 995 F.3d 495, 512 (6th Cir. 2021) (quoting *George v. Youngstown State Univ.*, 966 F.3d 446, 464 (6th Cir. 2020)).  "This burden is not heavy, though, as summary judgment is warranted only if no reasonable juror could conclude that the employee's offered reason was pretextual."  *Id.* (quoting *George*, 966 F.3d at 462).  Here, however, Plaintiff has not even attempted to point to pretext evidence.  Plaintiff has not pointed the Court to

21

any evidence establishing that Defendants' reason or explanation: "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Pemberton*, 150 F.4th at 767.  Plaintiff does not even make such an argument in her Opposition.  Thus, even if her discipline is an adverse employment action, Plaintiff has not set forth any evidence showing that Defendants' decision to discipline her was pretext.  Accordingly, her discrimination claims fail as a matter of law to the extent they are premised upon her reprimand.

In summary, Plaintiff has not produced any evidence of an adverse employment action that is sufficient to sustain her discrimination claims.  The Court therefore enters summary judgment in Defendants' favor on Plaintiff's discrimination claims.

## C.    Plaintiff's hostile work environment claim fails as a matter of law

Defendants argue in their Motion that "Plaintiff cannot establish a claim of hostile work environment or retaliation based on her age, sex, or FMLA use" because "[t]here is no evidence that any action taken by Defendants was connected to Plaintiff's age, sex or FMLA use and, taking all the allegations together, the alleged conduct was too sporadic and not sufficiently threatening or humiliating to create an objectively hostile workplace." (Doc. No. 14, PageID #382–83.) According to Defendants "[t]he record is devoid of evidence that Plaintiff was treated differently based on her sex." (*Id.* at PageID #383.)

Plaintiff responds that "[t]here is ample evidence in the record to support Plaintiff's claims." (Doc. No. 17, PageID #456.)  Plaintiff asserts that "[t]he only victims that were subjected to Defendant Sweat's tirades, verbal assaults and insults were female, including Plaintiff, Erika Spicer, and Megan Collins." (*Id.*)  According to Plaintiff, "Capt. Sweat's conduct was not sporadic and was in fact threatening and humiliating and directly aimed at women," and "Defendant Sheldon and

Defendant Masi were aware of prior complaints of similar mistreatment and misconduct made against Captain Sweat and took no action to protect women." (*Id.* at PageID #456–57.) Plaintiff further asserts that: (1) "Defendant Sweat belittled and embarrassed Plaintiff and made statements to staff referring to Plaintiff not being able to do her job because she had mental problems;" (2) "[w]hen Plaintiff would approach Defendant Sweat with work-related issues, he would talk down to her, intimidate her and address her in a degrading manner, making her feel stupid;" and (3) "[u]pon her return from FMLA leave, staff would intentionally ignore Plaintiff and would refuse to communicate with her regarding work-related issues, thereby making Plaintiff's job difficult to fulfill." (*Id.* at PageID #457.) And she asserts that "[t]his conduct was routine, not isolated." (*Id.*)

In their Reply, Defendants assert that "Plaintiff admits Capt. Sweat was friendly to her, never ignored or turned his back on her, and admits that when she told Capt. Sweat about co-worker issues, he addressed them and they would improve." (Doc. No. 18, PageID #595–96.) According to Defendants, "Plaintiff's bare assertions are insufficient to avoid summary judgment." (*Id.* at PageID #596.)

As recently explained by the Sixth Circuit:

To establish a prima facie hostile-work-environment claim, [plaintiff] must show five elements: (1) she is a member of a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on membership in a protected class, (4) the harassment was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment," and (5) [defendant] "knew or should have known about the harassment and failed to act." *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 565 (6th Cir. 2021) (citations omitted). [Plaintiff] exclusively challenges the severe-or-pervasive factor. To prevail on that factor, she must identify conduct that is "severe *or* pervasive" enough "to alter the conditions of the victim's employment and create an abusive working environment." *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 377 (6th Cir. 2026) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

23

*Spicer v. Harvard Maint.*, No. 25-1667, 2026 U.S. App. LEXIS 12750, at *16–17 (6th Cir. May 1, 2026); *accord Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 411 (6th Cir. 2021).  To prevail on this claim, the plaintiff must show a work environment that 'would reasonably be perceived . . . as hostile or abusive.'"  *Kellar v. Yunion, Inc.*, 157 F.4th 855, 872 (6th Cir. 2025) (quoting *McNeal v. City of Blue Ash*, 117 F.4th 887, 904 (6th Cir. 2024).  The Court considers "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threating or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* (cleaned up).  This is "a high bar."  *Id.*  Accordingly, "[i]solated incidents, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment."  *McDaniel v. Wilkie*, No. 17CV91, 2019 U.S. Dist. LEXIS 24441, at *9 (N.D. Ohio Feb. 13, 2019) (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000)).

Based on the Court's review of the record, the Court finds that the harassment was not sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.  As explained above, the Court has already determined that Plaintiff's working conditions were not objectively intolerable.  The Court finds that record reflects a few isolated situations that are insufficient to rise to the level of hostile work environment.  *Vinsant v. WNB Grp. LLC*, No. 25-3228, 2026 U.S. App. LEXIS 503, at *7 (6th Cir. Jan. 7, 2026) ("inappropriate comments about [the plaintiff's] appearance" that happened between "10 to 100 times over a 2.5-year period" insufficient to sustain a hostile work environment claim); *Amini v. Rite Aid Corp.*, 819 F. App'x 344, 349 (6th Cir. 2020) ("A handful of harsh age-based comments hardly makes a work environment hostile under the law"); *Clay v. UPS*, 501 F.3d 695, 707–08 (6th Cir. 2007) (fifteen

24

racially-motivated comments and instances of disparate treatment over a two-year period were isolated, not pervasive, and therefore not actionable under Title VII). The Court therefore enters summary judgment in favor of Defendants on Plaintiff's hostile work environment claim.

### D. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims

Having found summary judgment in favor of Defendants is warranted on all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

Pursuant to 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over state law claims once they have dismissed all claims over which they had original jurisdiction. "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[A] district court has broad discretion to decide whether to exercise jurisdiction over state law claims." *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 424 (6th Cir. 2015). However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *accord Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").

In this case, issues of comity strongly support the Court's decision to decline jurisdiction over Plaintiff's state law claims. As other courts have recognized, "[t]he interest in avoiding needless

25

decisions on state-law issues as a matter of comity weighs heavily against supplemental jurisdiction." *Howell v. Buckeye Ranch, Inc.*, No. 2:11-cv-1014, 2013 U.S. Dist. LEXIS 43644, at *21 (S.D. Ohio Mar. 27, 2013); *see also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 522 (6th Cir. 2007) (noting "the Supreme Court's general comity-related principle that residual supplemental jurisdiction be exercised with hesitation, to avoid needless decisions of state law").

Here, if the Court were to retain jurisdiction, it would be required to delve into numerous purely state law issues. For instance, Plaintiffs unlawful aiding and abetting wrongful termination claim is a statutory claim under Ohio law for which there are no similar federal claims. Similarly, Plaintiff's tortious interference with business expectancy claim is an Ohio common law claim with no federal analogue. Because the Court's rulings on Plaintiff's federal law claims do not fully resolve the remaining state law claims, comity concerns weigh in favor of the Court declining jurisdiction to avoid needlessly deciding state law issues.

Considerations regarding judicial economy, convenience, and fairness do not outweigh these concerns. Indeed, there is no indication that remanding the case to state court would cause any additional inconvenience to the parties. As far as the Court is aware, all of the parties and witnesses are located in Richland County, Ohio, and litigating in state court upon remand will be more convenient as litigating in this Court.. *See Fox v. Brown Memorial Home, Inc.*, 761 F. Supp. 2d 718, 725 (S.D. Ohio 2011). Moreover, with respect to judicial economy, the risk of duplicative litigation appears low, as the parties will presumably be able to resume litigating Plaintiff's claims in state court at the same procedural juncture where they left off in federal court, and there is no reason their discovery cannot be made available for the state court proceedings. *See id.*

26

The Court is cognizant that certain considerations relevant to the factors of judicial economy, fairness, and comity do tend to support retaining jurisdiction.  For example, discovery has closed and the parties have fully briefed Defendants' motion for summary judgment.  However, such things are common in situations in which courts have declined to exercise jurisdiction, especially here where the matter has been pending in federal court for less than a year-and-a-half.  *Lloyd v. Midland Funding, LLC*, No. 3:12-CV-566-TAV-HBG, 2016 U.S. Dist. LEXIS 71726, at *5 (E.D. Tenn. June 2, 2016) (noting that "[w]hen a court rules on a motion for summary judgment, it is commonplace for the case to have been in litigation for many years, for the parties to have completed discovery, and for the case to be on the eve of trial," but that the court "has regularly declined to exercise supplemental jurisdiction over state-law claims at that stage in litigation"); *see also Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 585 (6th Cir. 2011) (affirming remand of state law claims despite the fact that the case had been pending for over three years).  Also weighing against remand is the fact that "federal case law interpreting Title VII . . . is generally applicable to cases involving violations of [Ohio Revised Code] Chapter 4112." *McKinnon v. L-3 Communs. Corp.*, 814 F. App'x 35, 45 (6th Cir. 2020) (citation omitted).  And here one of Plaintiff's state law claims is a "State Claim for Retaliation" pursuant to O.R.C. § 4112.02.

On balance, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and denies Defendants' Motion with respect to Plaintiff's state law claims without prejudice to any right Defendants may have to refile their Motion upon remand to state court.

## V.     Conclusion

For the reasons set forth herein, Defendants' Motion is GRANTED in part and DENIED in part. Defendants are granted summary judgment on Plaintiff's claims for age discrimination, hostile

work environment, constructive discharge, ADA discrimination, and FMLA discrimination. Pursuant to 28 U.S.C. § 1367(c), the Court declines to address Plaintiff's state law claims for unlawful aiding and abetting wrongful termination, retaliation under O.R.C. § 4112.02, and tortious interference with business expectancy. The remainder of the case is REMANDED to the Court of Common Pleas of Richland County, Ohio, from which it was removed.

   **IT IS SO ORDERED.**

                                                          _s/Pamela A. Barker_____
                                                          PAMELA A. BARKER
Date:  May 8, 2026                                        U. S. DISTRICT JUDGE